Dear Mr. Gougelman:
As City Attorney for the City of Melbourne and on behalf of the Melbourne City Council, you have requested my opinion on substantially the following question:
Does section 286.011(8), Florida Statutes, authorize a city council to meet in executive session to consider the terms of mediation undertaken pursuant to the conflict resolution procedure set forth in Chapter 164, Florida Statutes?
In sum:
Section 286.011(8), Florida Statutes, does not authorize a city council to meet in executive session to consider the terms of settlement negotiations in conflict resolution proceedings under the "Florida Governmental Conflict Resolution Act."
According to your letter, the City of West Melbourne has filed a lawsuit against the City of Melbourne. The lawsuit seeks declaratory relief and relates to a water agreement between the two municipalities. Subsequent to filing the action, the City of West Melbourne requested the circuit court to place the proceeding in abatement pursuant to Chapter 164, Florida Statutes, while Melbourne and West Melbourne engaged in conflict resolution procedures.
The two cities are currently engaged in the second phase of the three-phase process of conflict resolution. That is, pursuant to section164.1055(1), Florida Statutes, the two city councils have met and the potential framework for a settlement has been agreed to. Your letter indicates that "[a]s the settlement has been reduced to words, many complex issues have been presented." If resolution of this matter is not accomplished during this phase of the proceeding, the statutory conflict resolution process provides for mediation in section 164.1055(2), Florida Statutes.
You advise that it would be helpful for the Melbourne City Council to meet in executive session "to refine settlement offers and counteroffers, as provided by Section 286.011(8)(b), Florida Statutes." Your concerns arise in light of an Informal Attorney General Opinion addressed to Mr. Mark McQuagge, dated February 13, 2002, in which this office concluded that "in the absence of any expression of legislative intent that officials attending mediation sessions pursuant to section164.1055, Florida Statutes, are authorized to privately discuss among themselves the matters being considered at such a meeting, it would appear that any such meetings must be conducted openly and in accordance with the provisions of section 286.011, Florida Statutes."
The Florida Governmental Conflict Resolution Act, sections 164.101-164.1061, Florida Statutes, [1] was adopted by the Florida Legislature in 1999.[2] As stated in section 164.102, Florida Statutes, the purpose and intent of the act is
"to promote, protect, and improve the public health, safety, and welfare and to enhance intergovernmental coordination efforts by the creation of a governmental conflict resolution procedure that can provide an equitable, expeditious, effective, and inexpensive method for resolution of conflicts between and among local and regional governmental entities. It is the intent of the Legislature that conflicts between governmental entities be resolved to the greatest extent possible without litigation."
The act imposes a duty on governmental entities to negotiate prior to prosecuting a legal action.[3] The act provides in part that
"[i]f a governmental entity files suit against another governmental entity, court proceedings on the suit shall be abated, by order of the court, until the procedural options of this act have been exhausted. The governing body of a governmental entity initiating conflict resolution procedures pursuant to this act shall, by motion, request the court to issue an order abating the case pursuant to this section. All governmental entities are encouraged to use the procedures in this act to resolve conflicts that may occur at any time between governmental entities, but shall use these procedures before court proceedings, consistent with the provisions of this section."[4]
Thus, the provisions of the act are intended to apply before a legal action is filed or, in a case where legal action has been initiated, the judicial action shall be abated until the conflict resolution procedure has been completed.
The governing body of a governmental entity initiates the conflict resolution process by passing a resolution.[5] The resolution must relate the intention of the governing body to begin the conflict resolution procedures of the act prior to initiating court proceedings or prosecuting action on a previously filed court proceeding. The resolution must specify the issues of conflict and the governmental entity or entities with which there is a conflict. Following passage of the resolution, a letter and a certified copy of the resolution must be provided to the governmental entity with which the conflict exists. The letter must set forth the conflict, other governmental entities who may be involved, the justification for initiating the conflict resolution process, the proposed date and location for a conflict assessment meeting, and suggestions as to personnel who should be present at such meeting.[6]
Following initiation of the conflict resolution procedure, the statute calls for a conflict assessment meeting. Section 164.1053(1), Florida Statutes, describes the conflict assessment phase of the process and requires that a conflict assessment meeting must occur within 30 days of the receipt of the letter initiating the conflict resolution procedure. Public notice of this meeting must be given and the conflict assessment meeting must be scheduled to allow the attendance of the appropriate governmental personnel or their designees. During this meeting the representatives of the governmental entities are required to discuss the issues relating to the conflict and to assess the conflict from the perspective of each governmental entity involved. If no resolution is achieved by this meeting, any primary conflicting governmental entity may request mediation.
Following the conflict assessment phase, section 164.1055, Florida Statutes, requires the scheduling of a "joint public meeting" between the representatives of the primary conflicting governmental entities. At this meeting, the parties involved shall:
"(a) Consider the statement of issues prepared in the conflict assessment phase.
(b) Seek an agreement.
(c) Schedule additional meetings of the entities in conflict, or of their designees, to continue to seek resolution of the conflict."[7]
This is the stage of conflict resolution at which the City of Melbourne and the City of West Melbourne have arrived. If no agreement is reached following the joint public meeting, both conflicting governmental entities must participate in mediation.[8] However, I would note that the mediation stage has not been reached in this dispute between the City of Melbourne and the City of West Melbourne.
The Informal Attorney General Opinion to Mr. McQuagge to which you have cited, dealt with a situation in which no litigation was on-going and the question related to the procedures for conducting the mediation phase of the conflict resolution process. That opinion noted that "nothing in chapter 164, Florida Statutes, generally, or in section 164.1055, Florida Statutes, particularly, addresses whether the representatives of conflicting governmental entities may meet privately to discuss the terms of the on-going mediation." It is my opinion that this conclusion applies equally to the procedures preceding the mediation phase of conflict resolution procedures under section 164.1055, Florida Statutes.
Florida's Government in the Sunshine Law, section 286.011, Florida Statutes, provides a right of access to government proceedings at both the state and local levels. This right is also recognized by the Florida Constitution. Article I, section 24, Florida Constitution, provides access to public records and meetings and requires that the Florida Legislature provide certain evidence of the necessity for any exemption of meetings from the Government in the Sunshine Law.[9] As a statute enacted in the public interest to protect the public from "closed door" politics, the Sunshine Law must be broadly construed to effect its remedial and protective purpose.[10]
A fundamental requirement of the Sunshine Law is that meetings of entities covered by the Sunshine Law be "open to the public." The term "open to the public" as used in section 286.011, Florida Statutes, means open to all persons who choose to attend.[11] In addition, the courts of this state have held that the Sunshine Law extends to discussions and deliberations as well as formal actions taken by a public board or commission.[12]
Conflict resolution meetings conducted under Chapter 164, Florida Statutes, require participation by governmental officials or their representatives who meet to discuss the resolution of intergovernmental conflicts. If designees attend such meetings they must possess full authority to negotiate on behalf of the governmental entity and to recommend settlement to the decision-making body of the governmental entity.[13] Any resolution of the issues must be officially adopted by the governing bodies of the entities involved. Thus, this office has concluded that conflict resolution or mediation meetings conducted pursuant to Chapter 164, Florida Statutes, which involve officials or representatives of local governmental entities, would come within the scope of Florida's Government in the Sunshine Law.[14]
You have asked specifically whether a city council may meet in closed executive session pursuant to section 286.011(8)(b), Florida Statutes, to "refine settlement offers and counteroffers" developed during the Chapter 164 conflict resolution process. You analogize this to the requirement in section 286.011(8)(b) providing for "shade meetings" for discussion of settlement negotiations or strategy sessions related to litigation expenditures. You also note that litigation has been filed in this case, but abated by the court until the conflict resolution process has ben concluded.
Section 286.011(1), Florida Statutes, makes all meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, at which official acts are to be taken, open to the public at all times. During the 1993 legislative session, subsection (8) was added to section 286.011, Florida Statutes, to provide:
"Notwithstanding the provisions of subsection (1), any board or commission of any state agency or authority or any agency or authority of any county, municipal corporation, or political subdivision, and the chief administrative or executive officer of the governmental entity, may meet in private with the entity's attorney to discuss pending litigation to which the entity is presently a party before a court or administrative agency, provided that the following conditions are met:
(a) The entity's attorney shall advise the entity at a public meeting that he or she desires advice concerning the litigation.
(b) The subject matter of the meeting shall be confined to settlement negotiations or strategy sessions related to litigation expenditures.
(c) The entire session shall be recorded by a certified court reporter. The reporter shall record the times of commencement and termination of the session, all discussion and proceedings, the names of all persons present at any time, and the names of all persons speaking. No portion of the session shall be off the record. The court reporter's notes shall be fully transcribed and filed with the entity's clerk within a reasonable time after the meeting.
(d) The entity shall give reasonable public notice of the time and date of the attorney-client session and the names of persons who will be attending the session. The session shall commence at an open meeting at which the persons chairing the meeting shall announce the commencement and estimated length of the attorney-client session and the names of the persons attending. At the conclusion of the attorney-client session, the meeting shall be reopened, and the person chairing the meeting shall announce the termination of the session.
(e) The transcript shall be made part of the public record upon conclusion of the litigation."
Section 286.011(8), Florida Statutes, does not create a blanket exception to the open meeting requirement of the Sunshine Law for all meetings between a public board or commission and its attorney. The exemption covers a more limited situation than the attorney-client communications exception recognized for private litigants.[15] Only discussions of pending litigation to which the public entity is presently a party are subject to its terms. Moreover, such discussions are limited to settlement negotiations or strategy sessions related to litigationexpenditures. In addition, the other conditions specified by the Legislature must be fully met by a public entity in order to claim the exemption.[16]
In Attorney General Opinion 95-06, this office noted that section286.011(8), Florida Statutes, by its terms is limited to particular individuals who in their official capacity are authorized to discuss particular limited subjects. To invoke the exemption in the statute, the governmental entity may meet with its attorney under the following conditions: (1) the discussion relates to pending litigation; (2) the entity is presently a party before a court or administrative agency in the pending litigation; (3) the entity's attorney has informed the entity at a public meeting that he or she desires advice concerning the litigation; and (4) the subject matter of the meeting is confined to settlement negotiations or strategy sessions related to litigation expenditures.
In the case of Zorc v. City of Vero Beach, [17] the court, acknowledging the dearth of cases interpreting the scope of section286.011(8), Florida Statutes, looked to the statute's legislative history to determine whether the city's action at a closed meeting went beyond the statute's scope and stated:
"This act is not an attempt to provide a means for government to meet behind closed doors to accomplish goals out of the sunshine. This act simply provides a governmental entity's attorney an opportunity to receive necessary direction and information from the governmental entity. No final decisions on litigation matters can be voted on during these private, attorney-client strategy meetings. The decision to settle a case, for a certain amount of money, under certain conditions is a decision which must be voted upon in a public meeting."[18]
The Zorc court noted that other than legislative history, there are few cases defining "settlement negotiations" or "strategy related to litigation expenditures."[19] However, it concluded that the city's action in a closed-door meeting authorizing its counsel to include specified language in a consent decree and to sign any necessary documents in order to settle the city's claim was formal action requiring a vote at a public meeting. The court stated that the "settlement of a case is exactly that type of final decision contemplated by the drafters of section 286.011(8) which must be voted upon in the sunshine."[20]
Thus, the provisions of section 286.011(8), Florida Statutes, do not extend confidentiality to discussions of subject matter outside the scope of the statute. As an exception to the Government in the Sunshine Law, the exemption must be read strictly with a view toward protecting the interests of the public.[21] While litigation may be pending, [22]
the exemption in section 286.011(8), Florida Statutes, applies only to settlement negotiations or strategy sessions related to litigation expenditures undertaken regarding the pending litigation. Discussions between the city attorney and the city commission relating to settlement of a conflict under the Florida Governmental Conflict Resolution Act would not come within the scope of this exemption. Nothing in section286.011(8), Florida Statutes, extends the coverage of the exemption to discussions of mediated disputes or to issues arising through the conflict resolution procedure whether or not litigation has been filed.
In sum, it is my opinion that section 286.011(8), Florida Statutes, does not authorize a city council to meet in executive session to consider the terms of settlement negotiations in conflict resolution proceedings under the "Florida Governmental Conflict Resolution Act."
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See s. 164.101, Fla. Stat., for the short title for the act.
[2] See Ch. 99-279, Laws of Fla.
[3] Section 164.1031(3), Fla. Stat., defines "[g]overnmental entity" to include local and regional governmental entities, and s. 164.1031(1) and (2), Fla. Stat., define "[l]ocal governmental entities" and "[r]egional governmental entities," respectively.
[4] Section 164.1041(1), Fla. Stat.
[5] Section 164.1052(1), Fla. Stat.
[6] Id.
[7] Section 164.1055(1)(a)-(c), Fla. Stat.
[8] Section 164.1055(2), Fla. Stat.
[9] See Art. I, s. 24(c), Fla. Const. And see Frankenmuth MutualInsurance Company v. Magaha, 769 So. 2d 1012, 1021 (Fla. 2000), noting that the Sunshine Law "is of both constitutional and statutory dimension."
[10] See Wood v. Marston, 442 So. 2d 934, 938 (Fla. 1983); Canney v.Board of Public Instruction of Alachua County, 278 So. 2d 260 (Fla. 1973); Board of Public Instruction of Broward County v. Doran, 224 So. 2d 693 (Fla. 1969).
[11] See, e.g., Ops. Att'y Gen. Fla. 01-66 (2001) and 99-53 (1999).
[12] See Hough v. Stembridge, 278 So. 2d 288 (Fla. 3d DCA 1973) (Sunshine Law applies to any gathering, whether formal or casual, of two or more members of the same board or commission to discuss some matter on which foreseeable action will be taken by the board or commission).
[13] See s. 164.1031(6), Fla. Stat., defining a "[d]esignee" as a representative with full authority to negotiate.
[14] See Inf. Op. to McQuagge, dated February 13, 2002. And see Cityof Miami Beach v. Berns, 245 So. 2d 38 (Fla. 1971); Board of PublicInstruction of Broward County v. Doran, 224 So. 2d 693 (Fla. 1969); and Ops. Att'y Gen. Fla. 95-06 (1995) (if designee is authorized to exercise any decision-making authority on behalf of council, that person would be acting on behalf of the council or the board and meeting is subject to s. 286.011, Fla. Stat.); 90-17 (1990) (if city council member had been delegated authority on behalf of entire city council to negotiate with private garbage contractor, meetings would be subject to Government in the Sunshine Law).
[15] Cf. s. 90.502, Fla. Stat., recognizing a lawyer-client privilege under the Florida Evidence Code.
[16] Op. Att'y Gen. Fla. 93-53 (1993).
[17] 722 So. 2d 891 (Fla. 4th DCA 1998).
[18] 722 So. 2d at 901, quoting Final Bill Analysis Economic Impact Statement, CS/HB 491, Florida House of Representatives Committee on Governmental Operations (1993).
[19] See, e.g., Freeman v. Times Publishing Company, 696 So. 2d 427,428 (Fla. 2d DCA 1997) ("settlement negotiations" did not encompass a 25-year-old final judgment; while it was still a pending suit, it was not in the posture to be settled before judgment or pending appeal);Brown v. City of Lauderhill, 654 So. 2d 302 (Fla. 4th DCA 1995) (city attorney may meet in private to discuss attorney's fees).
[20] 722 So. 2d at 901.
[21] See Op. Att'y Gen. Fla. 95-06 (1995).
[22] See Op. Att'y Gen. Fla. 06-03 (2006), discussing the meaning of the word "pending" and utilizing the dictionary definition for the term to suggest that "pending" for purposes of s. 286.011(8), Fla. Stat., means
"Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is "pending" from its inception until the rendition of final judgment."